IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GUADALUPE TORRES,

    Plaintiff,                        No. CIV S-04-0079 LKK GGH P

    vs.

HEMSLEY, et al.,

    Defendants.             FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he received inadequate medical care from defendants Correctional Officer Hemsley and Nurse Meyer while housed at the Yolo County Jail as a civil detainee. Nurse Meyer was originally identified in this action as "Nurse Jackie." On July 1, 2005, the court granted defendant Meyer's summary judgment motion.

        Pending before the court is defendant Hemsley's summary judgment motion filed April 8, 2005. Yolo County has also appeared in this action although the court did not order service of this defendant. The April 8, 2005, summary judgment motion is made on behalf of defendant Yolo County as well. After carefully considering the record, the court recommends that defendants' summary judgment motion be granted.

1

II. <u>Summary Judgment Standards Under 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See <u>id.</u> at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

1  On March 17, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

III. Legal Standard for Inadequate Medical Care Claim

A civil detainee's constitutional right to adequate medical care is coextensive with a convicted prisoner's Eighth Amendment right to medical treatment. See Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

/////

1    In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994), the Supreme Court
2 defined a very strict standard which a plaintiff must meet in order to establish "deliberate
3 indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.
4 However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm
5 which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979.
6 Neither is it sufficient that a reasonable person would have known of the risk or that a defendant
7 should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

8    It is nothing less than recklessness in the criminal sense—a subjective standard—
9 disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at
10 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn
11 that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837,
12 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk
13 of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at
14 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his
15 knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was
16 obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at
17 1981. However, obviousness per se will not impart knowledge as a matter of law.

18    Also significant to the analysis is the well established principle that mere
19 differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth
20 Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,
21 662 F.2d 1337, 1344 (9th Cir. 1981).

22    Moreover, a physician need not fail to treat an inmate altogether in order to violate
23 that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.
24 1989). A failure to competently treat a serious medical condition, even if some treatment is
25 prescribed, may constitute deliberate indifference in a particular case. Id.
26 /////

1       Additionally, mere delay in medical treatment without more is insufficient to state
2   a claim of deliberate medical indifference.  <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766
3   F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is
4   no requirement that the delay cause "substantial" harm.  <u>McGuckin</u>, 974 F.2d at 1060, citing
5   <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-
6   1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends
7   to provide additional support for a claim of deliberate indifference; however, it does not end the
8   inquiry.  <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the
9   medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those
10  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of
11  the defendant."  <u>McGuckin</u>, 974 F.2d at 1061.

IV.  <u>Discussion</u>

        The following facts are undisputed unless where otherwise discussed.

        On the afternoon of September 5, 2002, defendant Hemsley was assigned to the Subcontrol Room in Area A-2 of the Yolo County Jail.  His duties at that time included supervising the inmates during yard activity.  During that afternoon, defendant observed plaintiff playing handball.  Sometime during the afternoon, plaintiff contacted defendant Hemsley via the intercom system between the Subcontrol Room and the exercise yard and told him that he had scratched his eye and it was bleeding.

        Defendant Hemsley told plaintiff that he would contact medical staff.  Using his radio, defendant then contacted the nurse on duty and requested that she respond to him on the jail internal telephone system.  A nurse called defendant on the telephone, at which time defendant advised her of plaintiff's complaint.

        Defendant told the nurse that neither plaintiff's eye nor face were bleeding, and that he saw a little blood on a napkin plaintiff was holding.  Plaintiff does not dispute this description of his condition.  Defendant also told the nurse that plaintiff had resumed playing

1  handball. Plaintiff disputes this description of his conduct, and claims that he was only bouncing
2  the ball against the wall to distract him from the pain.
3       The parties dispute who decided that plaintiff's injury was not sufficiently serious
4  to warrant an emergency visit to the exercise yard by the nurse. Defendant claims that the nurse
5  determined that plaintiff's injury was not an emergency and that he could be seen that evening
6  during pill pass after defendant described to her the injury and plaintiff's behavior.
7       In his verified complaint, plaintiff alleges that 15 minutes after he asked defendant
8  Hemsley to call the nurse, plaintiff asked the Day Room Officer when the nurse would be there.
9  The Day Room Officer told plaintiff that the nurse was on her way. After a few more minutes,
10 plaintiff asked the Day Room Officer when the nurse would arrive and informed him that his eye
11 was still bleeding and the pain was intensifying. Plaintiff then claims that he heard defendant
12 Hemsley state over the intercom to the Day Room Officer that he (defendant Hemsley) had
13 cancelled the emergency request for the nurse because he had observed plaintiff playing handball.
14 Plaintiff alleges that both defendant Hemsley and the Day Room Officer told him that he would
15 have to wait until the Evening Medication Line to have his eye checked. Plaintiff alleges that he
16 continued to complain that his eye was causing him extreme pain and again showed the officers
17 the bloody toilet paper.
18      The parties do not dispute that plaintiff was not seen that evening during pill pass
19 for the injury. Plaintiff does not claim that defendant Hemsley was responsible for his failure to
20 be examined that evening. The parties also do not dispute that plaintiff was seen by a physician's
21 assistant for his eye injury on September 9, 2002. The parties do not dispute that plaintiff refused
22 any treatment at that time.
23      Defendant argues that he is entitled to qualified immunity as to plaintiff's claim
24 for inadequate medical care. The determination of whether a prison official is entitled to
25 qualified immunity is a two-step test. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151
26 (2001). In the first step, the court views the record in the light most favorable to the party

1 asserting injury to determine whether the officer's conduct violated a constitutional right. <u>Id.</u> If
2 the plaintiff establishes the violation of a constitutional right, the court next considers whether
3 that right was clearly established at the time the alleged violation occurred. <u>Id.</u> The contours of
4 the right must have been clear enough that a reasonable officer would have understood that what
5 he was doing violated that right. <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034
6 (1987).

7   Although the nature of the "serious medical condition" is in doubt (plaintiff
8 refused all treatment a day after the incident, and there appears to have been no long terms
9 injury), the court will presume that plaintiff has stated a colorable Eighth Amendment claim.
10 The next step in the qualified immunity analysis is whether a reasonable correctional officer
11 would have believed that their failure to seek emergency medical treatment for plaintiff violated
12 the constitution.

13   With respect to this last inquiry, it is necessary to focus upon the Ninth Circuit's
14 explanation of <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S. Ct. 2151 (2001):

> An officer might correctly perceive all of the relevant facts but
> have a mistaken understanding as to whether a particular amount of
> force is legal in those circumstances. If the officer's mistake as to
> what the law requires is reasonable, however, the officer is entitled
> to the immunity defense.

Id. The converse also is true:

> Officers can have reasonable, but mistaken, beliefs as to the facts
> establishing the existence of probable cause or exigent
> circumstances, for example, and in those situations courts will not
> hold that they have violated the Constitution.

Id.

> Fourth, and perhaps most important for the present discussion, the
> Court chided us for taking a minimalist view of our role in
> reviewing a ruling on summary judgment:
>
> The approach the Court of Appeals adopted--to deny summary
> judgment any time a material issue of fact remains
> on the excessive force claim--could undermine the goal of
> qualified immunity to "avoid excessive disruption of government

1  and permit the resolution of many insubstantial claims on summary
2  judgment." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

3  Id. at 2156. The Court did not suggest that we lacked jurisdiction
4  to consider the defendant's appeal, but instead held that we deferred too much to the district court's conclusion that an issue of
5  fact precluded summary judgment. Indeed, the Court has instructed us that the defendant "was entitled to qualified immunity" and has
6  returned the case to us to ensure dismissal of the claim. Id. at 2160. It is true that motive was not an issue in Saucier, but jurisdiction,
   as ever, was.

Jeffers v. Gomez, 267 F.3d 895, 909-910 (9th Cir. 2001) quoting at length from Saucier.

Thus, the Supreme Court has found that even taking all facts as stated in the complaint or motions as favoring the plaintiff for purposes of establishing the potential Constitutional violation, the courts can still determine *on summary judgment* that any mistakes made by the officer were reasonable under the circumstances, and the Ninth Circuit has confirmed the Supreme Court's approach in cases, such as the present one, where motive or state of mind is at issue.

Assuming plaintiff's version of events to be true, the court does not find that a reasonable correctional officer would have believed that their failure to seek emergency medical care violated the constitution. Plaintiff's symptoms and behavior did not suggest an emergency. Neither plaintiff's eye nor face were bleeding. Only a small amount of blood was seen on the napkin he carried. Most importantly, plaintiff was seen bouncing the handball against the wall. From these circumstances, even if ultimately mistaken, a correctional officer could reasonably infer that plaintiff's injury was not an emergency and that he could wait to be seen that evening during pill call.

Plaintiff alleges that he told defendant Hemsley that he was in extreme pain. However, plaintiff's behavior, i.e. bouncing the handball against the wall, did not indicate that he was in great pain. A reasonable correctional officer could have inferred that, in light of this behavior, plaintiff was exaggerating his pain. Had plaintiff, for example, been sitting on a bench

with his hand clasped over his eye, then a reasonable officer should have inferred that plaintiff was in pain and needed emergency medical treatment.

For the reasons discussed above, the court finds that defendant Hemsley is entitled to qualified immunity on grounds that a reasonable correctional officer would have determined that, based on the circumstances, plaintiff's injury was not an emergency that required immediate medical care.

Defendants move for summary judgment as to defendant Yolo County pursuant to Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018 (1978). Pursuant to Monell, a public entity may only be liable under Section 1983 if the alleged constitutional violation was pursuant to a municipal policy. Monell, 436 U.S. at 691, 98 S. Ct. at 2036. Plaintiff has presented no evidence demonstrating that his alleged deprivations resulted from a municipal policy. Accordingly, defendant Yolo County should be granted summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that the summary judgment motion filed April 8, 2005, on behalf of defendants Hemsley and Yolo County be granted,

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/7/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
torr79.sj(2)